IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HC OPERATING, LP, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:19-cv-2425-S-BN |
| | § | |
| ATLAS APARTMENTS | § | |
| ACQUISITION, LLC and STEVEN | § | |
| IVANKOVICH, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge for pretrial

management under 28 U.S.C. § 636(b) and a standing order of reference from United

States District Judge Karen Gren Scholer. *See* Dkt. No. 27. With the benefit of the

evidentiary hearing held on February 21, 2020, *see* Hr'g Tr.,[1] & Dkt. No. 32 (exhibit

and witness list), the undersigned enters these findings of fact, conclusions of law,

and recommendation that the Court should deny Plaintiffs'[2] Motion to Expunge *Lis*

*Pendens*, *see* Dkt. No. 17.

---

[1] As an official transcript of the hearing is not available at this time, the undersigned cites to the rough draft of the transcript. The testimony cited below may appear on a different page or line in the official transcript.
[2] Plaintiffs are HC Operating, LP, Huffines Retail Partners, LP, The Haley Angelica Huffines 1995 Trust dated October 26, 1995 a/k/a the Haley Angelica Huffines 1995 Children's Trust, The Garrett James Huffines 1995 Trust dated October 26, 1995 a/k/a the Garrett James Huffines 1995 Children's Trust, The Hayden Hartwell Huffines 1995 Trust dated October 26, 1995 a/k/a the Hayden Hartwell Huffines 1995 Children's Trust, The Donald B. Huffines 1996 Children's Investment Trust dated May 10, 1996, Huffines Plano Properties, LP, The Phillip W. and Holly A. Huffines 2011 Children's Trust f/b/o Haley Angelica Huffines u/a/d August 23, 2011, The Phillip W. and Holly A. Huffines 2011 Children's Trust f/b/o Garrett James Huffines u/a/d August 23, 2011, The Phillip W. and Holly A. Huffines 2011 Children's Trust f/b/o Hayden Hartwell Huffines u/a/d August 23, 2011, Riverside DPH,

## Background

The present action arises out of "multiple agreements" between Defendant Atlas Apartment Acquisition, LLC ("Atlas" or "Purchaser") and Plaintiffs, under which Atlas "would acquire all of the membership interests in multiple limited liability companies and, thereby, gain ownership of Hebron 121 Station and Harmony Hill apartments." Dkt. No. 15 ¶ 26; Dkt. No. 17 ¶ 3. Specifically, Atlas entered into five agreements with one or more of the Plaintiffs in September and October 2018: (1) "Membership Interest Purchase Agreement (Phases 1, 2, 3, and 4 – Hebron 121 Station)" – the "Hebron 1-4 Agreement," *see* Dkt. No. 24 Ex. A; (2) "Membership Interest Purchase Agreement (Phase 5 – Hebron 121 Station)" – the "Hebron 5 Agreement," *see id.* Ex. B; (3) "Purchase Agreement" – the "Hebron 6 Agreement," *see id.* Ex. C; (4) "Membership Interest Purchase Agreement (Harmony Hill Phase 1)" – the "Harmony 1 Agreement," *see id.* Ex. D; and (5) "Membership Interest Purchase Agreement (Phase 2 – Harmony Hill)" – the "Harmony 2 Agreement," *see id.* Ex. E. *See also* Dkt. No. 15 ¶¶ 27-29; Dkt. No. 17 ¶¶ 4-5.

In Hebron 1-4, Hebron 5, Harmony 1, and Harmony 2 Agreements, Plaintiffs "agreed to sell to [Atlas]" their "right, title, and interest in and to the Membership Interest" in certain limited liability companies. Dkt. No. 17 ¶ 3; Dkt. No. 24 Ex. A § 2.01; *id.* Ex. B § 2.01; *id.* Ex. D § 2.01; *id.* Ex. E § 2.01. These agreements contemplated a transfer of ownership of real property, as Plaintiffs "acknowledge[d]"

---

LP, HC Operating, LP, The Phillip Huffines 1996 Trust u/a/d June 26, 1996 a/k/a The Phillip Huffines 1996 Trust, HC Harmony Hill Manager, Inc., and Benbrook Winchester, LP. *See* Dkt. No. 15 at 1.

in each one that "by selling the Membership Interests to Purchaser, Purchaser will be receiving all of the Company's right, title, and interest in the Project and to the following ... Parcels of real property ... ." Dkt. 24 Ex. A § 2.01; *id.* Ex. B § 2.01; *id.* Ex. D § 2.01; *id.* Ex. E § 2.01. (Additionally, Plaintiffs described the Hebron 5 and Harmony 2 Agreements as conditioning their "obligation to grant the ownership interest ... on [Atlas] obtaining Consents from the construction lenders." Dkt. No. 15 ¶ 32 (emphasis added); *see also id.* ¶ 31 ("Hebron 5 and Harmony 2 both involved transfers of projects that were currently under construction and subject to construction loans." (emphasis added)).) The Hebron 6 Agreement, on the other hand, was not an agreement for the transfer of a membership interest; rather, it was an agreement "to sell ... and ... to purchase ... all of such Seller's right, title, and interest in and to the ... respective Parcels of unimproved real property." *Id.* Ex. C § 2.01.

"[T]he [other] terms of the various [a]greements [were] very similar." Dkt. No. 15 ¶ 29. For example, all five agreements were scheduled to close on November 1, 2018, and required Atlas to deposit earnest money with an escrow agent by September 21, 2018, for the Hebron Agreements, and by October 7, 2018, for the Harmony Agreements. *See* Dkt. 24 Ex. A §§ 3.02, 6.01; *id.* Ex. B §§ 3.02, 6.01; *id.* Ex. C §§ 3.02, 6.01; *id.* Ex D. §§ 3.02, 6.01; *id.* Ex. E §§ 3.02, 6.01. The agreements also provided Atlas with 21 days to conduct due diligence and required Atlas to deposit additional earnest money within four business days after the conclusion of the due diligence period. *See id.* Ex. A §§ 4.03-.04; *id.* Ex. B §§ 4.03, 4.05; *id.* Ex. C §§ 4.03-.04; *id.* Ex. D §§ 4.03-.04; *id.* Ex. E §§ 4.03, 4.05. Hebron 5 and Harmony 2

Agreements differed from the rest in that they "specifically conditioned" Plaintiffs' "obligation to deliver the Grant Documents to [Atlas]" and Atlas's "obligation to pay the initial portion of the Purchase Price" on Plaintiffs' "being able to obtain [the] consent" of the "holder(s) of the Construction Loan" by October 1, 2018. *Id.* Ex. B at 6, 17; *id.* Ex. E at 7, 18.

As the parties agree, Atlas "never deposited ... the ... [e]arnest [m]oney and, as of October 30, 2018, the [a]greements were deemed terminated." Dkt. No. 15 ¶ 33; Dkt. No. 19 ¶ 33 (admitting the allegation). But Atlas "desired to continue with the transactions," and the parties entered into two Reinstatement and Omnibus Amendments that provided, among other things, (1) that Plaintiffs were required to obtain the consent of the construction loan holders by ninety days after the deposit of the additional earnest money; (2) that the initial scheduled closing date was automatically extended to Plaintiffs' deadline to obtain consent, if such was not obtained by the initial scheduled closing date; and (3) that a default under the Harmony Agreements would constitute a default of the Hebron Agreements as well. *See* Dkt. No. 15 ¶¶ 33-34; Dkt. No. 19 ¶¶ 33-34 (admitting the allegations); Dkt. No. 24 Ex. F ¶¶ 5-7; *id.* Ex. G ¶¶ 5, 6. The parties also amended the Hebron and Harmony Agreements 24 times, including entering into the Twenty-Fourth Amendment, effective May 16, 2019, which provided that the earnest money requirement could be satisfied by execution and delivery to Plaintiffs of personal guaranties by Defendant Steven Ivankovich ("Ivankovich" and, together with Atlas, "Defendants")). *See* Dkt. No. 15 ¶ 35; Dkt No. 19 ¶ 35; Dkt. No. 24 Ex. G at 134.

-4-

Ivankovich executed such personal guaranties on May 16, 2019, satisfying the earnest money deposit requirement. *See* Dkt. No. 15 ¶ 36; Dkt. No. 19 ¶ 36. But Plaintiffs allege that they were unable to obtain the lenders' consent because Atlas failed to provide various documents and information, despite notices from Plaintiffs that Atlas was in default. *See* Dkt. No. 15 ¶¶ 37-39. According to the First Amended Complaint, Atlas attempted to exercise its contractual right to extend the closing date to September 13, 2019, but the notice was untimely. *Id.* ¶ 42.

Based on these allegations, Plaintiffs brought the above-captioned action for breach of contract, breach of guaranty, and attorneys' fees on September 13, 2019 in the District Court of Dallas County, Texas. *See* Dkt. No. 1 Ex. A.

Atlas and Ivankovich removed the action to this Court on October 14, 2019, *see id.* at 1-5, and, on November 12, 2019, Atlas filed its Counterclaim against Plaintiffs for breach of contract, declaratory judgment, preliminary and permanent injunction, and attorneys' fees. *See generally* Dkt. No. 9. According to Atlas, Plaintiffs breached their contractual obligations by, among other things: (1) failing to provide financial information in June and July 2019, which materially impeded Atlas's "ability to finalize its financing for this deal"; (2) failing to finalize an agreement under which Atlas was to become a third-party beneficiary to the existing construction contracts (the "Construction Joinder Agreements"); (3) failing to negotiate an agreement with the Denton County Transportation Authority ("DCTA") to transfer a ground lease to Atlas; and (4) failing to obtain lenders' consents. *See id.* ¶¶ 24-25, 28, 50. Atlas further

claims that Plaintiffs agreed to extend the closing date to September 15, 2019, but filed suit before the agreed closing date. *See id.* ¶¶ 35-36, 38.

After filing its counterclaim, Atlas filed two notices of lis pendens in the Denton and Dallas County Real Property Records on December 2, 2019. *See* Dkt. No. 17 ¶ 10. Plaintiffs then filed their Motion to Expunge *Lis Pendens*, which is now briefed and before the Court. *See generally id.*

## Legal Standard

"Texas state law controls the validity of a lis pendens in federal court." *Garza-Selcer v. 1600 Pac. Subtenant, LLC*, Civ. A. No. 3:15-cv-3791-N, 2016 WL 11474103, at *8 (N.D. Tex. Aug. 30, 2016) (citing 28 U.S.C. § 1964). The Texas Property Code provides that, "during the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property," a party may file a notice that the action is pending. TEX. PROP. CODE § 12.007(a). "A lis pendens does not operate as a lien on property," and it "'operates only during the pendency of the lawsuits ... .'" *Pruitt v. Bank of N.Y. Mellon*, Civ. A. No. 3:15-CV-2359-L, 2015 WL 6157319, at *1 (N.D. Tex. Oct. 19, 2015) (first citing *In re Miller*, 433 S.W.3d 82, 85 (Tex. App. – Houston [1st Dist.] 2014, no pet.); and then quoting *Berg v. Wilson*, 353 S.W.3d 166, 180 (Tex. App. – Texarkana 2011, pet. denied)).

But "party to an action in connection with which a notice of lis pendens has been filed" may "apply to the court to expunge the notice." TEX. PROP. CODE § 12.0071(a). The Court

shall order the notice of lis pendens expunged if the court determines
that: (1) the pleading on which the notice is based does not contain a real
property claim; (2) the claimant fails to establish by a preponderance of
the evidence the probable validity of the real property claim; or (3) the
person who filed the notice for record did not serve a copy of the notice
on each party entitled to a copy under Section 12.007(d).

*Id.* § 12.0071(c). Under Section 12.0071(c)(1), the district court must expunge a lis

pendens if the claimant fails to "demonstrate that the underlying litigation is 'an

action involving title to real property, the establishment of an interest in real

property, or the enforcement of an encumbrance against real property.'" *In re Moreno*,

NO. 14-14-00929-CV, 2015 WL 225049, at *2 (Tex. App. – Houston [14th Dist.] Jan.

15, 2015, orig. proceeding) (quoting TEX. PROP. CODE § 12.007(a)). "'In other words,

the property against which the lis pendens is filed must be the subject matter of the

underlying lawsuit.'" *Maniatis v. SLF IV - 114 Assemblage, L.P.*, NO. 06-18-00061-

CV, 2019 WL 1560680, at *4 (Tex. App. – Texarkana Apr. 11, 2019, rev. denied)

(quoting *In re Collins*, 172 S.W.3d 287, 293 (Tex. App. – Fort Worth 2005, orig.

proceeding)). If there is a dispute of material fact as to whether the property is the

subject of the underlying lawsuit, the court may not grant the motion to expunge on

this basis. *See In re Collins*, 172 S.W.3d at 297.

   Even if the court determines that the claimant adequately pleaded a real

property claim, the court must expunge the lis pendens if the claimant fails to

establish "the probable validity of its claim by a preponderance of the evidence." *In re

I-10 Poorman Invs., Inc.*, 549 S.W.3d 614, 617 (Tex. App. – Houston [1st Dist.] 2017,

orig. proceeding) (citation omitted). While a party cannot rely on conclusory affidavits

to meet this burden, it does not need to submit enough evidence prove its claim.

*Compare id.* (expunging a lis pendens where a party submitted an affidavit stating no more than that the action involved title to real property), *with In re Cook*, NO. 09-16-00420-CV, 2016 WL 7473894, at *2 (Tex. App. – Beaumont Dec. 29, 2016, orig. proceeding) (reversing expunction of a lis pendens where the party that filed the notice attested in an affidavit that she repaired the house, that the seller was aware that she intended to resell the house, and that she relied on the seller's promise to reduce their agreement to writing).

**Analysis**

Plaintiffs move to expunge the two lis pendens under Sections 12.0071(c)(1) and (c)(2), arguing that: (1) any claimed interest in real property is collateral to the claims asserted in this case and, therefore, the pleadings do not contain a "real property claim"; and (2) Atlas did not prove the probable validity of their real property claim. Dkt. No. 17 ¶¶ 13-18. For the reasons explained below, the Court should deny Plaintiffs' Motion.

I.    <u>Existence of a Real Property Claim</u>

As to Plaintiffs' first challenge to the lis pendens, the Court should find that Atlas's Counterclaim states a real property claim.

In general, a court must expunge a lis pendens if the "the property against which the lis pendens is filed [is not] the subject matter of the underlying lawsuit." *Maniatis*, 2019 WL 1560680, at *4 (quoting *In re Collins*, 172 S.W.3d at 293). The claimed interest in the property must be "direct" and not "collateral." *See, e.g.*, *In re Chong*, NO. 14-19-00368-CV, 2019 WL 2589968, at *3 (Tex. App. – Houston [14th Dist.] June 25, 2019, orig. proceeding) (discussing *Flores v. Haberman*, 915 S.W.2d

477, 478 (Tex. 1995) (per curiam)). An interest in property is collateral if, for example, it is alleged "merely to secure the award of a possible judgment." *In re Moreno*, 2015 WL 225049, at *2 (citation omitted). On the other hand, the Texas Court of Appeals found that a party "undoubtedly claim[ed] a direct interest in the ... property" by alleging that a party "committed fraud against" it by promising to convey 50% interest in real property in exchange for signing a Memorandum of Understanding. *In re Collins*, 172 S.W.3d at 295-96; *see also In re Cohen*, 340 S.W.3d 889, 898 (Tex. App. – Houston [1st Dist.] 2011, orig. proceeding) ("In evaluating whether a plaintiff has sufficiently pleaded a real property claim for purposes of supporting a notice of lis pendens, ... a pleading requesting the restoration of a prior ownership interest in a particularly identified property ... is sufficient.").

Here, Atlas is seeking, among other things, to enjoin Plaintiffs from transferring the properties subject to the Hebron and Harmony Agreements and to order Plaintiffs to "close the transactions contemplated by the [a]greements." Dkt. No. 9 ¶ 63(f)-(g). Atlas is also seeking "specific performance" under the Hebron and Harmony Agreements. *See id.* at 1. Most of these agreements contemplated transfer of real property, *see* Dkt. 24 Ex. A § 2.01; *id.* Ex. B § 2.01; *id.* Ex. D § 2.01; *id.* Ex. E § 2.01, and one agreement was entered into for the sole purpose of conveying real property, *see id.* Ex. C. § 2.01. And Plaintiffs admitted that these agreements were "for the sale of several real estate assets." Dkt. No. 16 ¶ 1.

Thus, "the propert[ies] against which the lis pendens [were] filed [are] the subject matter of the underlying lawsuit." *Maniatis*, 2019 WL 1560680, at *4 (quoting

*In re Collins*, 172 S.W.3d at 293). Atlas's Counterclaim, by seeking to compel Plaintiffs to close the transactions "and, thereby, gain ownership of the Hebron 121 Station and Harmony Hill apartments," Dkt. No. 17 ¶ 3, contains a real property claim on the face of the pleadings. *See In re Cohen*, 340 S.W.3d at 898.

This result is consistent with *In re Med Plus Equity Investments, LP*, No. 0-50-05-00404-CV, 2005 WL 1385238 (Tex. App. – Dallas June 13, 2005, orig. proceeding), the case on which Plaintiffs primarily rely, *see* Dkt. No. 17 ¶ 15. *Med Plus* concerned an alleged agreement to enter a partnership as a limited partner, where the partnership would purchase some property. *See* 2005 WL 1385238, at *1. The case did not concern acquisition of the assets of the partnership, and the party defending the lis pendens complained that it was not allowed "to participate in the ... <u>partnership</u> and <u>its</u> purchase of the ... property." *Id.* (emphases added). As the claimant was seeking to vindicate its rights as a partner, the Texas Court of Appeals held that the party's claims "only addresse[d] an interest in the partnership." *Id.* Thus, *Med Plus* stands for the unsurprising proposition "that suit for interest in partnership will not support lis pendens." *In re Collins*, 172 S.W.3d at 293 n.18 (citing *Med Plus*, 2018 WL 1385238, at *1).

Regardless, Plaintiffs' argument creates a dispute of fact as to the whether the agreements created a direct interest in the real property, or merely a collateral one, which cannot be resolved on a motion to expunge a lis pendens. *See id.* at 297 (finding that the court abused its discretion by granting a motion to void a lis pendens where

a triable issue of fact existed as to "whether the ... parties have a direct interest in the ... property").

The Court should deny the motion to expunge the lis pendens under Section 12.0071(c)(1).

II.    Probable Validity of the Real Property Claim

Based on the evidence introduced on the record at the February 21, 2020 evidentiary hearing, the undersigned recommends finding that Atlas established "the probable validity of its claim by a preponderance of the evidence." *In re I-10 Poorman*, 549 S.W.3d at 617.

In determining whether the claimant met his or her burden, the court may consider oral testimony, affidavits, counteraffidavits, and "any other proof the court allows." *In re Rescue Concepts, Inc.*, 498 S.W.3d 190, 194 (Tex. App. – Houston [1st Dist.] 2016, orig. proceeding) (quoting TEX. PROP. CODE § 12.0071(b)(1), (e)). While the claimant does not need to prove its claim by a preponderance of the evidence*, see In re Cook*, 2016 WL 7473894, at *2 (finding that a single, uncontroverted affidavit was sufficient), the court must expunge a lis pendens if the party produces no evidence in support of its claims, *see In re Rescue Concepts*, 498 S.W.3d at 194, or nothing but conclusory affidavits, *see In re I-10 Poorman*, 549 S.W.3d at 617.

Here, Atlas seeks specific performance and injunctive relief based on Plaintiffs' alleged breaches of the Hebron and Harmony Agreements. *See generally* Dkt. No. 9. Under either theory of relief, Atlas must show a breach of contract. *See Arm Corp. Member Ltd. v. AEU Benefits, LLC*, Civ. A. No. 3:18-CV-1265-K, 2018 WL 5809283, at *2 (N.D. Tex. Nov. 6, 2018) ("'Specific performance is an equitable remedy that may

be awarded upon a showing of breach of contract.'" (quoting *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App. – Dallas 2007, pet. denied))); *Doughty v. J.P. Morgan Chase Bank, N.A.*, Civ. No. 3:13-CV-4404-N-BK, 2014 WL 1976875, at *3 (N.D. Tex. May 15, 2014) ("Injunctive relief is an 'equitable remedy, not an independent cause of action[.]'" (quoting *Puente v. CitiMortgage, Inc.*, No. 11-CV-2509, 2012 WL 4335997, at *7 (N.D. Tex. 2012))).

"In Texas, '[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (alteration in original) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. – Houston [1st Dist.] 2001, no pet.)). "In addition to the elements for breach of contract, the party seeking specific performance must also establish that there is no adequate remedy at law to compensate it for its loss." *Geske v. Wells Fargo Bank, Nat'l Ass'n*, Civ. A. No. 3:11-CV-3337-L, 2012 WL 1231835, at *5 (N.D. Tex. Apr. 12, 2012) (citing *S. Plains Switching, Ltd. v. BNSF Ry. Co.*, 255 S.W.3d 690, 703 (Tex. App. – Amarillo 2008, pet. denied)).

As explained below, the Court should find that Atlas established the probable validity of its claim by a preponderance of the evidence.

a.    *The Existence of a Valid Contract*

"A valid contract requires '(1) an offer; (2) an acceptance in strict compliance with terms of offer; (3) a meeting of the minds; (4) a communication that each party

consented to the terms of the contract; (5) execution and delivery of the contract with an intent it become mutually binding on both parties; and (6) consideration.'" *Owens v. Specialized Loan Servicing, L.L.C.*, 694 F. App'x 950, 953 (5th Cir. 2017) (quoting *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App. – Houston [14th Dist.] 2005, no pet.)).

Here, the record reflects that the parties entered into five written, signed contracts, *see* Dkt. No. 24 Exs. A-E, which is "evidence of a valid and enforceable agreement." *Atlas Trading Conglomerate Inc. v. AT&T Inc.*, Civ. A. No. 3:15-CV-0404-K, 2016 WL 5870857, at *4 (N.D. Tex. Oct. 5, 2016) (citation omitted). And the parties do not appear to dispute that the Hebron and Harmony Agreements were valid contracts, as both parties are seeking to enforce certain provisions of these contracts. *See* Dkt. No. 9 ¶¶ 41-57 (pleading counterclaims against Plaintiffs based on the agreements); Dkt. No. 15 ¶¶ 45-49 (pleading claims against Atlas and Ivankovich based on the agreements); Pl.'s Ex. 2 at A-1 (a letter from Plaintiffs' counsel advising Atlas that it was in default under the agreements). Although Plaintiffs claimed in their briefing that the agreements expired and could not be enforced, *see* Dkt. No. 17 ¶ 18, all witnesses uniformly agreed that the closing date was extended to at least September 13, 2019, *see* Hr'g Tr. 51:22-25, 52:8-16 (testimony of Phillip Huffines); *id.* at 108:7-10, 122:7-17 (testimony of Charles Morris); *id.* at 183:24-184:7 (testimony of Steven Ivankovich), and Plaintiffs instituted this action on September 13, 2019, *see* Dkt. No. 1 Ex. A, which Defendants contend was a breach of the agreements, *see* Dkt. No. 26 ¶¶ 32-33.

The Court should find by a preponderance of the evidence that the first prong of Atlas's breach of contract claim is satisfied.

      *b.*    *Atlas's Performance or Tendered Performance*

In a breach of contract action, the claimant must show that it performed, tendered performance, or was excused from performing its contractual obligations. *See Krayem v. USRP (PAC), L.P.*, 194 S.W.3d 91, 94 (Tex. App. – Dallas 2006, pet. denied). To show that it tendered performance, the claimant must demonstrate its "'readiness and willingness to perform in case of the concurrent performance by the other party, with present ability to do so, and notice to the other party of such readiness.'" *Luccia v. Ross*, 274 S.W.3d 140, 149 (Tex. App. – Houston [1st Dist.] 2008) (quoting *Perry v. Little*, 419 S.W.2d 198, 200 (Tex.1967)).

Plaintiffs in the present case contend that Atlas breached the Hebron and Harmony Agreements by "fail[ing] to provide the information and documents required by the [l]ender[s] to obtain the [c]onsents," and by "fail[ing] to pay the [e]arnest [m]oney." Dkt. No. 15 ¶¶ 46-47. The parties submitted largely conflicting testimony on this element. Grant Steven Morrow of Trez Capital Corporation, for instance, testified that Ivankovich submitted "undecipherable information," with "some documents in Chinese," as part of Atlas's attempt to obtain Trez Capital's consent. Hr'g Tr. 27:19-28:12. Plaintiff also solicited testimony from Charles Morris, a partner at Husch Blackwell, LLP – the law firm that represented Plaintiffs in the underlying transaction – that Atlas did not take any steps to close the transaction. *See id.* at 92:4-8, 92:25-93:10, 121:2-19.

-14-

But Atlas elicited testimony suggesting that it duly performed their obligations. For example, Morrow admitted on cross-examination that Trez Capital received the requested information from Atlas but that it was not "in the form ... [Morrow] would expect." *Id.* at 29:21-25. Ivankovich further testified that First United Bank gave its consent after receiving substantially the same information as Trez Capital, which casts doubt on Morrow's claim that he received "undecipherable information." *See id.* at 151:15-152:14. Additionally, Ivankovich contradicted Morris, testifying unequivocally that Atlas had "funding ready and available for th[e] transaction on August 14th and September 13th," and that it was ready and willing to complete the transaction. *See id.* at 162:4-12, 204:2-4.

This testimony, which the undersigned finds credible, is sufficient on the second element of Atlas's breach of contract claim to establish its probable validity.

Witnesses for both sides also agreed that Atlas and Ivankovich did not pay earnest money. *See, e.g.*, Hr'g Tr. 95:3-5 (testimony of Charles Morris); *id.* at 172:15-19 (testimony of Steven Ivankovich). But the parties expressly agreed in their Twenty-Fourth Amendment that the earnest money requirement could be satisfied if Ivankovich personally guarantied "the payment of the Earnest Money Deposit." Dkt. No. 24 Ex. G at 134. It is undisputed that Ivankovich provided such a guaranty. *See* Hr'g Tr. 35:8-17 (testimony of Phillip Huffines); *id.* at 172:11-19 (testimony of Steven Ivankovich). As the parties may modify their agreement, *see, e.g.*, *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 701-02 (Tex. App.—Dallas 2008, no pet.),

Defendants may have satisfied their obligation to pay earnest money when Ivankovich gave his personal guaranty.

### c.    Plaintiffs' Alleged Breach

"'Breach' means the failure, without legal excuse, to perform a promise that forms all or part of an agreements, the refusal to recognize the existence of an agreement, or the doing of something inconsistent with its existence." *Doucette v. Ditech Fin. LLC*, Civ. A. No. 1:19-CV-00366-MJT, 2019 WL 4934857, at *2 (E.D. Tex. Aug. 30, 2019) (citation omitted); *see also B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App. – Houston [1st Dist.] 2009, pet. denied) (defining "breach" as the failure or refusal "to do something [the party] has promised to do." (quoting *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App. – Houston [14th Dist.] 2006, pet. denied))). In general, "'[t]he court determines what conduct is required by the parties,' and, to the extent the parties dispute whether or not they have performed that conduct, the court submits that factual dispute to the jury." *X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 414 (5th Cir. 2013) (quoting *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App. – Houston [14th Dist.] 1996, writ denied)). "Whether a breach is material is a question of fact." *Id.* (citation omitted).

Atlas contends that Plaintiffs breached the Hebron and Harmony Agreements by: (1) filing this lawsuit before the agreed closing date, *see id.* ¶¶ 35-36, 38; Dkt. No. 26 ¶¶ 32-33; (2) failing to obtain consents of lenders "in a form reasonably acceptable to Atlas," Dkt. No. 9 ¶ 42; (3) failing "to jointly negotiate and execute the Construction Joinder Agreement," *id.* ¶ 43; (4) failing to negotiate or draft an agreement assigning the DCTA ground lease to Atlas, *see id.* ¶ 50; and (5) "failing to

provide to Atlas updated financial information and 'a calculation of pro-rated costs' to Atlas before August 14, 2019," *id.* ¶¶ 54, 55.

The undersigned addresses the evidence of these alleged breaches below.

i.      Plaintiffs' Decision to Institute Legal Action

"Under Texas law, when one party's wrongful interference prevents the other party's performance of a contract, not only is the other party's performance excused, but the interfering party has committed a breach of contract for which the other party may recover damages sustained from the breach." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 629-30 (N.D. Tex. 2010) (citing *Longview Const. & Dev., Inc. v. Loggins Const. Co.*, 523 S.W.2d 771, 779 (Tex. Civ. App. – Tyler 1975, writ dism'd by agr.)). Here, Ivankovich testified that Atlas had "funding ready and available ... on August 14th and September 13th" and that it was ready and willing to complete the transaction, *see* Hr'g Tr. 162:4-12, 204:2-4, but that Plaintiffs' lawsuit "had a chilling effect" on Atlas's ability to get financing and prevented the parties from being able to "consummate [the] transaction," *see id.* at 205:6-206:6.

While Plaintiffs dispute that Atlas was ready and willing to perform but for the lawsuit, *see* Dkt. No. 29 ¶¶ 19-21, Atlas's evidence is sufficient to establish the probable validity of its breach of contract claim based on Plaintiffs' alleged wrongful interference with Atlas's ability to close.

And Plaintiffs' filing of this action may in itself amount to a breach of the Hebron and Harmony Agreements. The agreements allow Plaintiffs to sue for earnest money and interest only if Atlas is in default of their "material obligations ... and such failure continues for a period of five ... [b]usiness [d]ays following written notice from

-17-

[P]laintiffs." Dkt. No. 24 Ex. A § 18.01; *id.* Ex. B § 18.01; *id.* Ex. C § 18.01; *id.* Ex. D § 18.01; *id.* Ex. E § 18.01. The evidence is uncontroverted that the closing date was extended to September 13, 2019, *see* Hr'g Tr. 51:22-25, 52:8-16, 108:7-10, 122:7-17, 183:24-184:7, and that the only notice of Atlas's purported default was provided on August 16, 2019, *see* Pls.' Ex. 2 at A-1. But that notice of default advised Atlas that it "has failed and refused to take the actions needed to obtain the Lender Consents," *see id.* at 1-2 – a proposition that Atlas disputes, *see* Hr'g Tr. 29:21-25, 151:15-152:14, 162:4-12, 204:2-4.

Thus, a dispute of material fact exists as to whether Atlas was in default entitling Plaintiffs to file suit. If Atlas defaulted, Plaintiffs were entitled to seek earnest money and interest; otherwise, Plaintiffs' filing breaches the express terms of the parties' agreement.

ii.    Failure to Obtain Trez Capital's Consent

The Hebron 5 and Harmony 2 Agreements "specifically condition[]" Atlas's obligations on Plaintiffs ability "to obtain Lender's consent ... in a form reasonably acceptable to [Plaintiffs] and [Atlas]." Dkt. No. 24 Ex. B § 4.08; *id.* Ex. E § 4.08. In general, the failure to satisfy a condition precedent does not give rise to a claim for breach of contract. *See, e.g.*, *McMahan v. Greenwood*, 108 S.W.3d 467, 484 (Tex. App. – Houston [14th Dist.] 2003, pet. denied) (citing *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992)). But "parties in Texas may contract as they wish so long as the agreement reached does not violate positive law or offend public policy." *Phila. Indem. Ins. v. White*, 490 S.W.3d 468, 475 (Tex. 2016) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex. 2004)).

-18-

The Hebron 5 and Harmony 2 Agreements expressly permit Atlas to seek specific performance under the agreements if "the non-satisfaction of a condition is a result of a breach or default by [Plaintiffs]." Dkt. No. 24 Ex. B §§ 4.08(b), 18.02; *id.* Ex. E §§ 4.08(b), 18.02. Thus, Atlas could bring a cause of action based on Plaintiffs' failure to obtain lender consents if that failure was the result of Plaintiffs' breach or default.

But, based on the evidence introduced at the February 21, 2020 hearing, the undersigned recommends finding that Atlas did not introduce sufficient evidence to state a breach of contract claim based on Plaintiffs' alleged failure to secure lender consents. While it is undisputed that Trez Capital did not consent to the transaction at issue, *see* Hr'g Tr. 30:16-19, 151:1-6, Atlas proffered no testimony suggesting that Plaintiffs' inability to obtain Trez Capital's consent was a result of Plaintiffs' breach or default. Rather, Ivankovich testified that Trez Capital was uncooperative, *see id.* at 152:15-153:16, and Katie Dunn, counsel for Plaintiffs, testified that they did "everything [they] could to get lender consents reasonably acceptable to [Atlas]," *id.* at 128:10-12.

Nothing in the record connects Trez Capital's refusal to cooperate with Atlas to Plaintiffs' default or breach. Therefore, Atlas did not demonstrate, by preponderance of the evidence, the probable validity of a breach of contract action based on the failure to obtain lender consents.

  iii.  Alleged Failure to Enter into a Construction Joinder Agreement

Under Hebron 5 and Harmony 2 Agreements, Plaintiffs and Atlas were to enter "into a joinder ... to the General Contract which [would] establish[] [Atlas] as a third

party beneficiary of all of the benefits and warranties contained within the General Contract." Dkt. No. 24 Ex. B § 21.01(b); *id.* Ex. E § 21.01(b). Although Atlas contends that Plaintiffs breached this provision, *see* Dkt. No. 9 ¶¶ 46, 59; Dkt. No. 26 ¶ 20, Atlas did not introduce any evidence at the February 21, 2020 hearing in support of its claim, and its pleadings are not evidence. *See Driessen v. Innovate Loan Servicing, Corp.*, Civ. A. No. 4:16-cv-01066-O-BP, 2018 WL 1536641, at *4 (N.D. Tex. Jan. 23, 2018) (citing *Skennion v. Godinez*, 159 F. App'x 598, 601 n.1 (5th Cir. 2005)). The Court should find that Atlas did not meet its burden of proving, by a preponderance of the evidence, the probable validity of a breach of contract action based on the alleged failure to negotiate a Construction Joinder Agreement.

      iv.      Alleged Failure to Assign the DCTA Lease

The alleged agreement to assign the DCTA lease is not embodied in the Hebron or Harmony Agreements. *See* Hr'g Tr. 58:11-59:6 (testimony of Phillip Huffines, disclaiming knowledge of the agreement to assign the DCTA lease); *see also* Dkt. No. 9 ¶ 20 (alleging that "[o]n March 20, 2019, Plaintiffs promised Atlas that it would assign the DCTA Ground Lease to Atlas," that "Atlas accepted Plaintiffs' offer," but that Atlas "never received a draft of any assignment"). To recover for a breach of an agreement to assign the DCTA lease, Atlas must first demonstrate that a valid contract to assign the lease exists between the parties. *See Smith Int'l. Inc.*, 490 F.3d at 387 (quoting *Valero Mktg.*, 51 S.W.3d at 351). This, in turn, requires Atlas to prove: "'(1) an offer; (2) an acceptance in strict compliance with terms of offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent it become mutually

binding on both parties; and (6) consideration.'" *Owens*, 694 F. App'x at 953 (quoting *Cruse*, 165 S.W.3d at 24). Atlas did not present any evidence on these elements, and, therefore, failed to prove the probable validity of a breach of a contract to assign the DCTA lease by a preponderance of the evidence.

        v.        Delayed Disclosure of Updated Financial Information

As explained above, a party may breach a contract by preventing the other party's performance of its obligations through wrongful interference. *See Narvaez*, 757 F. Supp. 2d at 629-30 (citing *Longview Const.*, 523 S.W.2d at 779). According to Atlas, Plaintiffs breached the agreements by providing two months' worth of financial information on the eve of closing. *See* Dkt. No. 9 ¶¶ 24-26, 54. As the evidence is uncontroverted that Plaintiffs provided Atlas with financial statements for June and July 2019 on September 12, 2019, the day before the parties agreed to close, *see* Hr'g Tr. 48:4-15, 63:15-21, 132:15-23, 133:16-134:1; Pls.' Ex. 5 at 2, the sole issue is whether this allegedly belated disclosure amounts to wrongful interference that prevented Atlas from closing the transaction. The undersigned recommends finding that Atlas submitted sufficient evidence demonstrating that the belated disclosure impaired its ability to perform.

The financials were evidently important to Atlas, as even Phillip Huffines had heard Atlas or its counsel express an "interest and desire to have the opportunity to review and evaluate the financials." Hr'g Tr. 77:5-9. The belated disclosure may also amount to a breach of Section 4.01 or 4.02 of the Hebron and Harmony Agreements, which require Plaintiffs to provide Atlas with certain materials to allow it to conduct due diligence, as well as "non-confidential property management files ... and any

additional information reasonably requested by" Atlas within "[t]wo ... [b]usiness [d]ays' notice." Dkt. No. 24 Ex. A §§ 4.01, 4.02; *id.* Ex. B §§ 4.01, 4.02; *id.* Ex. C §§ 4.01, 4.02; *id.* Ex. D §§ 4.01, 4.02; *id.* Ex. E §§ 4.01, 4.02. And Steven Ivankovich explained that the "financials [were] incredibly important to establishing and maintaining value of the property, as well as to determine what the final prorations and exchange of money [was] at a closing." *Id.* at 158:11-14.

Plaintiffs' disclosure of two months' worth of financial statements the day before closing apparently worried Atlas's investors, who allegedly perceived the belated disclosure as an attempt to conceal information. *See id.* at 160:9-25. And Ivankovich testified that the Atlas's analysts would need an additional month to evaluate the newly disclosed financials. *See id.* at 161:4-16.

This evidence is sufficient, at this stage of the litigation, to prove the probable validity of a breach of contract claim premised on the allegation that Plaintiffs' disclosure of financial information wrongfully interfered with Atlas's ability to close the transaction.

For the reasons discussed above, the undersigned recommends finding that Atlas introduced sufficient evidence on the third element of its breach of contract claim to establish the claim's probable validity.

### d.    *Damages*

"The last element [of a breach of contract claim] encompasses a causation requirement. Specifically, the evidence must show that the damages are the 'natural, probable, and foreseeable consequence of the defendant's conduct.'" *Velvet Snout, LLC*

*v. Sharp*, 441 S.W.3d 448, 451 (Tex. App. – El Paso 2014, no pet.) (internal citations omitted) (collecting authorities).

Here, Atlas contends that it was injured by Plaintiffs' breach because it was "unable to close on any of the transactions contemplated by the [a]greements." Dkt. No. 9 ¶ 47. The testimony introduced at the February 21, 2020 evidentiary hearing supports this assertion. *See* Hr'g Tr. 161:4-16 (testifying that Plaintiffs' disclosure of June and July 2019 financial statements the day before closing required an additional month of analysis); *id.* at 205:6-206:6 (testifying that Plaintiffs' lawsuit prevented Atlas from consummating the transaction).

The Court should find that the preponderance of the evidence is in favor of finding the fourth element of Atlas's breach of contract claim to be satisfied for the purposes of determining whether the claim is probably valid.

  e.   *Specific Performance*

To be entitled to specific performance, the claimant must establish that it "cannot be fully compensated through the legal remedy of damages or [that] damages may not be accurately ascertained," *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 153 (5th Cir. 2004), that it was "'ready, willing, and able to timely perform' contractual obligations," and that it performed or tendered performance, *Longhorn Integrity Inspection Servs., L.L.C. v. McCurdy*, 738 F. App'x 273, 275 (5th Cir. 2018) (quoting *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008)); *Chapman v. Olbrich*, 217 S.W.3d 482, 491 (Tex. App. – Houston [14th Dist.] 2006, no pet.) (citation omitted). For the reasons discussed below, the undersigned recommends finding that

Atlas submitted sufficient evidence on each of these elements for the purposes of the present motion to expunge lis pendens.

      i.      Adequacy of Legal Remedy of Damages

"Specific performance is a common remedy in real property cases." *Elsas v. Yakkassippi, L.L.C.*, 746 F. App'x 344, 348 (5th Cir. 2018). Although the district court has discretion to award damages in lieu of specific performance, *see id.*, "damages are generally believed to be inadequate in connection with real property," *Rus-Ann Dev., Inc. v. ECGC, Inc.*, 222 S.W.3d 921, 927 (Tex. App. – Tyler 2007, no pet.) (citation omitted). In this case, the breach of contract claim concerns title to real property for the reasons articulated above, and the undersigned finds no reason why specific performance should be disallowed as a remedy. For one, the parties expressly considered specific performance as a remedy for Plaintiffs' breach of the agreements. *See, e.g.*, Dkt. No. 24 Ex. A § 18.02 (allowing Atlas, in the event of Plaintiffs' default, to "continue this Agreement and seek specific performance of [Plaintiffs'] obligations hereunder ... ."). Furthermore, Steven Ivankovich testified that the transaction was attractive, in part, because he "loved the asserts, loved the locations," and thought the "properties [were] extremely well built, very sound, [in] good locations" and with "[e]xcellent units." Hr'g Tr. 137:13-18. Accordingly, the undersigned recommends finding that Atlas submitted sufficient evidence to demonstrate that it would not be fully compensated through the legal remedy of damages.

      ii.      Ready, Willing, and Able to Perform

"'The doctrine is fundamental that a party seeking the remedy of specific performance ... must show himself to have been ready, desirous, prompt, and eager.'"

*Lawler*, 269 S.W.3d at 593 (quoting *Ratcliffe v. Mahres*, 122 S.W.2d 718, 721-22 (Tex. Civ. App. – El Paso 1938, writ ref'd)). The claimant must demonstrate that he or she "was ready, willing, and able to perform at the time required by the contract," as opposed to "at the time the lawsuit is filed." *Id.* at 600. And the claimant must produce evidence to this end, and may not satisfy this requirement by merely pleading that he or she "was ready, willing, and able to perform." *Id.*

In this case, Ivankovich testified that Atlas had "funding ready and available for th[e] transaction on August 14th and September 13th," and that it was ready and willing to complete the transaction on both days. Hr'g Tr. 162:4-12, 204:2-4. While Plaintiffs dispute Ivankovich's testimony – largely by pointing to Defendants' filings in this lawsuit, *see, e.g., id.* at 176:3-25; Dkt. No. 29 ¶¶ 19-21 – Atlas was not required to prove its readiness to close the transaction to preserve its lis pendens. Rather, Atlas needed to prove by a preponderance of the evidence the probable validity of its claim, *see In re I-10 Poorman*, 549 S.W.3d at 617, which can be accomplished with as little as one uncontroverted affidavit, *see In re Cook*, 2016 WL 7473894, at *2.

Based on the evidence presented before the undersigned, Atlas sufficiently proved its probable entitlement to specific performance.

### iii.    Performance or Tendered Performance

Texas law provides that "the tender-of-performance requirement for specific-performance claims is excused if the defendants have repudiated the contract. A party repudiates a contract if the party manifests, by words or actions, a definite and unconditional intention not to perform the contract according to its terms." *Chapman*, 217 S.W.3d at 492 (citations omitted). Texas law thus allows a buyer to seek specific

performance even without tendering performance, if the seller "put[s] it out of [the buyer's] power to perform" by repudiating the contract, such as by "enter[ing] into a binding contract to sell the property in question to" another. *Id.* (citing *Burford v. Pounders*, 199 S.W.2d 141, 145 (Tex. 1947)).

In the present case, as explained above, Atlas submitted sufficient evidence showing that Plaintiffs made its performance of the agreements impossible by instituting this lawsuit on the day of the closing. *See* Hr'g Tr. 205:6-206:6. For the purposes of the present motion, Plaintiffs' lawsuit evidences "a definite and unconditional intention not to perform the [Hebron and Harmony Agreements] according to [their] terms." *Chapman*, 217 S.W.3d at 492.

The Court should find that Atlas sufficiently demonstrated entitlement to specific performance for its breach of contract claim.

### Recommendation

The Court should deny Plaintiffs' Motion to Expunge *Lis Pendens* [Dkt. No. 17].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 23, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE